# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DEMARCUS L. CHAMBERS,** : | |
| Petitioner, : | |
| : | No. 1:19-cv-2067 |
| v. : | |
| : | (Judge Rambo) |
| **DAVID J. EBBERT,** : | |
| Respondent : | |

## **MEMORANDUM**

On November 25, 2019, *pro se* Petitioner Demarcus L. Chambers ("Petitioner"), who is currently incarcerated at the Administrative United States Penitentiary in Thomson, Illinois ("AUSP Thomson"), initiated the above-captioned case by filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 in the United States District Court for the Western District of Tennessee. (Doc. No. 1.) At that time, Petitioner was incarcerated at USP Lewisburg, located within this district. Accordingly, in an Order entered on December 3, 2019, the Western District of Tennessee transferred this matter to this Court for further proceedings. (Doc. No. 5.) On December 5, 2019, the Court directed Respondent to show cause why Petitioner should not receive the relief sought. (Doc. No. 8.) Respondent filed his response on December 20, 2019. (Doc. No. 11.)

In an Order dated January 14, 2020, the Court directed Respondent to file a supplemental response regarding Petitioner's First Step Act claim within fourteen

(14) days and granted Petitioner's motion for an extension of time to the extent that Petitioner was directed to file his traverse within thirty (30) days of the date on which Respondent filed his supplemental response. (Doc. No. 15.) Respondent filed his supplemental response on January 15, 2020. (Doc. No. 16.) On February 21, 2020, the Court received from Petitioner another motion for an extension of time to file his traverse (Doc. No. 20) and his traverse (Doc. No. 21). The Court will grant Petitioner's motion for an extension of time and deem his traverse timely filed. On February 26, 2020, Respondent moved for leave to file a sur-reply (Doc. Nos. 22, 23), which the Court granted in an Order entered that same day (Doc. No. 24). Respondent filed his sur-reply on February 27, 2020. (Doc. No. 25.) Petitioner filed another reply on March 2, 2020. (Doc. No. 26.) Petitioner's § 2241 petition, therefore, is ripe for disposition.

## I. BACKGROUND

On August 6, 2009, Judge Donald of the United States District Court for the Western District of Tennessee sentenced Petitioner to 96 months' incarceration for Hobbs Act robbery and 84 months' incarceration, to be served consecutively, for possession of a firearm during and in relation to the robbery. (Doc. No. 11-1 at 19-21.) Judge Donald also recommended that Petitioner receive his GED and participate in intensive drug treatment during his incarceration. (*Id.* at 21.)

Petitioner's release date, with good conduct time factored in, is anticipated to be May 30, 2022. (*Id.* at 5, 7.)

In his § 2241 petition, Petitioner raises several claims for relief related to the Bureau of Prisons ("BOP")'s calculation of his sentence. Petitioner asserts that: (1) the BOP "did not follow the rules/arrangement of the sentencing court to make sure the 2 sentences be served consecutively"; (2) failed to credit him with additional good conduct time as required by the First Step Act; (3) disallowed too much good conduct time; and (4) has failed to transfer him to a halfway house and has failed to enroll him in the Residential Drug Treatment Program ("RDAP"). (Doc. No. 1 at 6-8.) As relief, Petitioner asks that: (1) his sentence be recalculated; (2) he receive additional good conduct time pursuant to the First Step Act; (3) the Court direct the BOP to restore good conduct time; (4) he receive a full 12 months in a halfway house; and (5) he be transferred to the RDAP drug program. (*Id.* at 8-9.)

## II. DISCUSSION

### A. Calculation of Sentence

Petitioner first asserts that the BOP has not followed the "rules/arrangement of the sentencing court to make sure the 2 sentences be served consecutively." (Doc. No. 1 at 6.) According to Petitioner, the BOP "aggregated the time, instead of allowing [him] to serve the higher sentence first, and then serve the lower sentence

consecutive." (*Id.* at 7.) He believes that this has resulted in him "doing more time on his sentence than what he should be doing." (*Id.*)

Petitioner's assertion lacks merit. Consecutive "terms of imprisonment . . . shall be treated for administrative purposes as a single, aggregate term of imprisonment." 18 U.S.C. § 2584(c). Thus, multiple sentences "shall be aggregated to form a *single* sentence for computation purposes." (Doc. No. 11-1 at 30.) Accordingly, the BOP properly calculated Petitioner's sentence to be an aggregated 180-month term of imprisonment. Petitioner, therefore, is not entitled to relief on this basis.

B.  **Claims Regarding Good Conduct Time**

Petitioner raises several claims regarding the loss of good conduct time. Under the relevant statute,

> [a] prisoner who is serving a term of imprisonment of more than 1 year . . . may receive credit toward the service of the prisoner's sentence, of up to 54 days for each year of the prisoner's sentence imposed by the court, subject to determination by the Bureau of Prisons that, during that year, the prisoner has displayed exemplary compliance with institutional disciplinary regulations.

18 U.S.C. § 3624(b)(1). Thus, Petitioner is eligible, but not automatically entitled, to receive up to 54 days of good conduct time for each of his 15 years of

4

imprisonment, for a maximum of 810 days. (Doc. No. 11 at 4.)[1] The Court considers his claims regarding loss of good conduct time below.

### 1. Unsatisfactory GED Progress

Petitioner maintains that the BOP has erred in calculating his good conduct time based upon his unsatisfactory status in working towards his GED. (Doc. No. 1 at 9.) The relevant statute provides that when "awarding credit . . . the Bureau shall consider whether the prisoner, during the relevant period, has earned, or is making satisfactory progress toward earning, a high school diploma or an equivalent degree." 18 U.S.C. § 3624(b)(1). An inmate "shall be deemed to be making satisfactory progress toward earning a GED credential or high school diploma" unless the inmate refuses to enroll in the literacy program; the inmate commits a

---

[1] In his § 2241 petition, Petitioner asserts that he has not received the additional good conduct time to which he is entitled under the First Step Act. (Doc. No. 1 at 7.) "Section 102(b)(1) of the First Step act 'amended 18 U.S.C. § 3624(b)(1) to change the manner in which good time credits are calculated by increasing the maximum allowable days from 47 to 54 per year.'" *Villafane v. White*, No. 1:19-cv-702, 2019 WL 2343075, at *1 (M.D. Pa. June 2, 2019) (quoting *Schmutzler v. Quintana*, No. 5:19-046-DCR, 2019 WL 727794, at *1 (E.D. Ky. Feb. 20, 2019)).

In an Order dated January 14, 2020, the Court directed Respondent to file a supplemental response because it appeared that Respondent had not addressed Petitioner's First Step Act claim. (Doc. No. 15 at 1.) In his supplemental response, Respondent avers that his initial response was "consistent with the calculation of Good Conduct Time (GCT) in the wake of the First Step Act." (Doc. No. 16 at 1.) Specifically, Respondent maintains that his analysis accounts for the First Step Act because he calculated the total amount of good conduct time for which Petitioner is eligible by multiplying 54 days by 15 years. (*Id.* at 2.) In his traverse, Petitioner asserts that the BOP owes him 77 days "for the First Step Act that went retroactive on July 19, 2019." (Doc. No. 21 at 8.) Upon consideration of the record, however, the Court concludes that Petitioner is incorrect and that Respondent and the BOP has taken into account the maximum amount of good conduct time that Petitioner can receive pursuant to the First Step Act.

5

prohibited act during the program; or the inmate withdraws from the program. 28 C.F.R. § 544.73(b)(1)(i)-(iii). If an inmate "has not earned or is not making satisfactory progress toward earning a GED credential or high school diploma," that inmate is eligible to receive only 42 days of good conduct time for each year served. 28 C.F.R. § 523.20(c)(2).

In his § 2241 petition, Petitioner asserts that he was in unsatisfactory status for 3 years, not 4 and, therefore, should have only lost 36 days of good conduct time. (Doc. No. 1-2 at 4.) In response, Respondent has provided a summary of Petitioner's educational information indicating that from March 27, 2013 until October 1, 2016, Petitioner was making unsatisfactory progress toward his GED. (Doc. No. 11-1.) In his traverse, Petitioner argues that he should not have lost any good conduct time at all because he "was still in GED school everyday at each penitentiary he's been to four each year." (Doc. No. 21 at 6.) In support of this argument, Petitioner includes a transcript indicating that he has been enrolled in GED classes. (*Id.* at 17.)

With respect to Petitioner's argument regarding the years in which he was in unsatisfactory status, the record before the Court indicates that Petitioner's anniversary date for year-end sentence calculations is July 19th because he began serving creditable time toward his sentence on July 19, 2008. (Doc. No. 11-1 at 17.) Petitioner, therefore, was in unsatisfactory status for the "end of the anniversary

6

periods beginning July 19, 2012; July 19, 2013; July 19, 2014; and July 19, 2015." (*Id.*) As a result, Petitioner was only eligible to receive a maximum of forty-two (42) days of good conduct time for each of those periods, and, therefore, is eligible for a maximum of 762 days of good conduct time for his 180-month aggregated sentence. (*Id.*) Moreover, with respect to Petitioner's argument that he is entitled to all 54 days of good conduct time for these anniversary periods, Petitioner overlooks the fact that the transcript he has submitted indicates that he has only been in satisfactory status since October 1, 2016. (Doc. No. 21 at 17.) In this respect, his transcript correlates with Respondent's exhibit, which also notes that Petitioner has been in satisfactory status since October 1, 2016. (Doc. No. 11-1.) Thus, for the 4 anniversary periods noted above, Petitioner was eligible to receive only a maximum of 42, not 54, days of good conduct time. Accordingly, he is not eligible for relief with respect to this claim.

## 2. Disciplinary Loss of Good Conduct Time

Petitioner also raises claims regarding his loss of good conduct time because of disciplinary sanctions. As previously noted, the award of good conduct time is

> subject to determination by the [BOP] that, during that year, the prisoner has displayed exemplary compliance with institutional disciplinary regulations. . . . [I]f the BOP determines that, during that year, the prisoner has not satisfactorily complied with such institutional regulations, the prisoner shall receive no such credit toward service of

> the prisoner's sentence or shall receive such lesser credit as the [BOP] determines to be appropriate.

18 U.S.C. § 3624(b)(1).

Respondent has submitted documentation that during his incarceration, Petitioner has been disciplined for several prohibited acts and has lost a total of 347 days of good conduct time as sanctions for these violations. (Doc. No. 11-1 at 8-15, 25-26.) Thus, Petitioner's good conduct time eligibility was reduced to 415 days. (*Id.* at 17.) Petitioner maintains that he should only have lost 298 days of good conduct time because he can only lose, at most, 54 days per year. (Doc. No. 1-2 at 4.) While Petitioner is correct that only 54 days of good conduct time can be disallowed per year, he neglects the fact that previously accrued good conduct time can be forfeited. *See* 28 C.F.R. 541.3(b).

Petitioner also asserts that the BOP disallowed 10 days of good conduct time "when he didn't have not one incident report on his inmate record in 2010 or 2011." (Doc. No. 1-2 at 8.) Respondent's exhibits, however, indicate that this forfeiture resulted from Petitioner's fighting incident in January of 2012. (Doc. No. 11-1 at 14-15, 25.) Petitioner was sanctioned with forfeiture of 10 days of non-vested good conduct time. (*Id.* at 25.) However, the sanction was entered in the prior anniversary period for good conduct time because good conduct time "earned during previous anniversary periods is the only [good conduct time] available for forfeiture." (*Id.* at

8

11.) Thus, even though Petitioner received the sanction in 2012, the BOP properly noted that the forfeiture was of good conduct time earned in 2010 and 2011.

Finally, Petitioner asserts that the BOP erred in forfeiting 14 days of good conduct time for a Code 399 incident report he received on August 27, 2015. (Doc. No. 1-2 at 7.) According to Petitioner, BOP policy states that an inmate cannot lose any good conduct time for a Code 300 incident. (*Id.*) Petitioner, however, is incorrect. The BOP has organized prohibited acts "into four separate categories based on severity: greatest; high; moderate; and low." 28 C.F.R. § 541.3(a). Moderate severity acts are designated with code numbers from 300-399. *Id.* § 541.3 Table 1. Table 1 specifically states that moderate severity level acts can be sanctioned with forfeiture, withholding, termination, or disallowance of good conduct time. *Id.* In sum, Petitioner is not entitled to relief for any of his claims concerning the disciplinary loss of good conduct time.

## C. Petitioner's Projected Release Date

In his § 2241 petition, Petitioner asserts that his correct projected release date should be October 5 or 15, 2021.[2] (Doc. No. 1-2 at 8.) In his traverse, however, he relies upon a sentence computation document from November 23, 2011, which indicated a projected release date of August 13, 2021. (Doc. No. 21 at 29.) Petitioner

---

[2] In his second reply, however, Petitioner states that his projected release date should be January of 2021. (Doc. No. 26 at 6.)

contrasts this date with a release date of April 30, 2021, which would have been Petitioner's projected release date had he not lost any good conduct time. (*Id.* at 3; *see also* Doc. No. 11-1 at 18.) Petitioner reasons that the 2011 sentence computation is proof that the BOP's calculation of his projected release date was incorrect from the beginning of his sentence. (Doc. No. 21 at 1-5.)

Petitioner's reliance on the 2011 sentence computation, however, overlooks the fact that as of November 23, 2011, he had not yet lost any good conduct time. (Doc. No 11-1 at 25-26.) Moreover, it did not account for the First Step Act, which was not enacted until 2018. Petitioner received an additional 105 days of good conduct time pursuant to that Act. (Doc. No. 26 at 8.) With that extra time, Petitioner's release date would have been April 30, 2021 had he not lost any good conduct time. The BOP, therefore, has made no error.

### D. Community Confinement Claim

Next, Petitioner requests that he receive a full twelve (12) months in a halfway house or community corrections center pursuant to the Second Chance Act of 2007. (Doc. No. 1 at 9.) He maintains that he requires a full 12 months because he is "a bit institutionalized" and that time will allow him "to adjust to the society, find a good job, get a car, a place to live, take drug classes, and get mental help from a psychologist for his issues." (Doc. No. 21 at 10.)

The relevant statute provides:

> The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

18 U.S.C. § 3624(c)(1). This Court has previously noted:

> The use of the word "may" in § 3624[] has led courts to consistently hold that the Act creates no absolute, enforceable legal right to a 12-month RRC placement for any prisoner. . . . Rather, what is required by the Act is a showing that the [BOP] engaged in an individualized determination of each inmate's RRC placement, using the statutory factors set forth in the law.

*Corey v. Baltazar*, No. 3:15-cv-1335, 2015 WL 9660021, at *6 (M.D. Pa. Oct. 29, 2015) (citations omitted), *Report and Recommendation adopted*, 2016 WL 74837 (M.D. Pa. Jan. 7, 2016).

Under BOP policy, however, "inmates are not typically evaluated for eligibility for transfer to community confinement until 17 to 19 months prior to the expiration of their prison term." (Doc. No. 11-1 at 3.) Because Petitioner's anticipated release date is May 30, 2022, the BOP has not yet made any determination about his placement in an RRC. (Doc. No. 11 at 9.) The United States Court of Appeals for the Third Circuit has noted that when "neither a final decision nor a final recommendation [on RRC] has been made . . . [the] habeas corpus petition

. . . is not ripe for judicial review." *Porter-Bey v. Bledsoe*, 456 F. App'x 109, 111 (3d Cir. 2012); *see also Curry v. Thomas*, No. 1:14-cv-756, 2014 WL 4078639, at *3 (M.D. Pa. Aug. 18, 2014) (noting that "where an inmate seeks judicial intervention in the RRC placement process before a final placement decision has been made, a habeas petition must be dismissed since the petition is premature and does not present a justiciable case or controversy"). Accordingly, Petitioner's claim for relief regarding RRC placement is not yet ripe for review by the Court.

### E. RDAP Claim

Finally, Petitioner requests that he be immediately transferred to the BOP's RDAP program "so he can receive treatment, and get one year reduced off of his prison sentence." (Doc. No. 1 at 9.) According to Petitioner, the sentencing court directed that he complete RDAP before being transferred to a halfway house. (*Id.*)

Congress has directed the BOP to "make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse." 18 U.S.C. § 3621(b). To complete the RDAP, an inmate must satisfy both a unit-based component and a transitional drug abuse treatment ("TDAT") component. 28 C.F.R. § 550.53(a). The unit-based component must last at least six (6) months and requires the inmate to "complete a course of activities provided by drug abuse treatment specialists and the Drug Abuse Program

12

Coordinator in a treatment unit set apart from the general prison population." *Id.* § 550.53(a)(1). The TDAT component is a "six (6) month program that begins within 10 days of the inmate's arrival at [a halfway house] and continues until the inmate is released." *Scott v. FCI Fairton*, 407 F. App'x 612, 615 (3d Cir. 2011). After an inmate completes RDAP, the BOP has the discretion to reduce what remains of his sentence by up to one (1) year. 18 U.S.C. § 3621(e)(2); 28 C.F.R. § 550.55. Not all inmates who complete RDAP, however, are eligible for early release. *Id.*

Respondent argues that the Court lacks jurisdiction over Petitioner's RDAP claim. (Doc. No. 11 at 10.) The Court agrees. "[G]iven BOP's authority to manage inmate drug treatment programs, including RDAP, 'any substantive decision by the BOP to admit a particular prisoner into RDAP, or to grant or deny a sentence reduction for completion of the program, is not reviewable by the district court.'" *Bermudez v. Warden, FCI Allenwood-Low*, No. 1:17-cv-519, 2017 WL 2473294, at *3 (M.D. Pa. June 8, 2017) (quoting *Reeb v. Thomas*, 636 F.3d 1224, 1227 (9th Cir. 2011)). Petitioner's request to be placed in the RDAP program "does not contest the legality of his conviction, 'the validity of the continued conviction[,] or the fact or length of a sentence.'" *Beckley v. Miner*, 125 F. App'x 385, 388 (3d Cir. 2005) (quoting *Leamer v. Fauver*, 288 F.3d 532, 542 (3d Cir. 2002)). Petitioner requests "only 'a ticket to get in the door' of a drug treatment program that, even if completed

to perfection, still affords the Bureau complete discretion to require Petitioner to serve his full sentence." *Id.* Accordingly, the Court lacks jurisdiction over Petitioner's claim requesting placement in the RDAP program.

## III. CONCLUSION

For the foregoing reasons, the Court will grant Petitioner's motion for an extension of time (Doc. No. 20) to file his traverse and deem his traverse (Doc. No. 21) timely filed. The Court will, however, deny Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Doc. No. 1.) An appropriate Order follows.

s/ Sylvia H. Rambo  
United States District Judge

Dated: March 12, 2020